Welcome to the 4th Circuit. We're ready to hear argument in our first case. Wills vs. Piszczolkowski. I'm not going to try that one. Mr. Cooper? Yes, Your Honor. I believe it's Pszczolkowski. Alright, thank you. May it please the Court, my name is Jeremy Cooper. I represent Johnny Franklin Wills who is incarcerated on a life recidivist sentence in Northern Correctional Facility in Moundsville, West Virginia. On several different occasions, the Supreme Court has held that it is unconstitutionally vague to increase an individual's criminal liability based on the standard that the crime presents a serious potential risk of physical injury to another. Mr. Wills' criminal liability was increased from the 1-10 year sentence that is a statutory sentence for grand larceny in West Virginia up to a 15 to life sentence based on the standard that there was threatened violence to the person involved in his crime. That's based upon the proportionality standard announced by the West Virginia Supreme Court in cases dating back to the 80s, late 70s, that period. Just to clarify, the statute itself increased the sentence, right? And the statute just requires three felonies, is that right? And then the potentially vague standard could possibly reduce that sentence, right? In your client's case, it didn't. But it's not the vague standard that increased it, technically. Well, I agree with you that the statutory text allows the imposition of a life sentence after three felonies. It doesn't differentiate the types of felonies, the type of showing that has to be made about what types of conduct took place. It's just three felonies. Functionally, however, for the entire time essentially that Mr. Wills has been alive, if you are convicted of three felonies and a recidivist information is filed against you, then that analysis has to be undertaken. Well, but to follow that question, the Johnson-DeMaio uncertainty language comes from West Virginia Supreme Court expressions. I'm reading one now, West Virginia v. Houston, which used the terminology, whether the nature of the crime involves the potential for threatened harm or violence. So that apparent allusion both to a categorical approach and an imprecise standard is from a state judicial decision. Yes, absolutely. That's not in the statute. It's not in the statute. I mean, that is the rule of law in West Virginia, but it comes from the statute. I think that goes perhaps to the key issue in your case as to whether or not a judicial imprimatur that creates void for vagueness is one that's recently recognized for habeas purposes. Yes, Your Honor. So the question, as you've discussed, is whether or not this standard, because it was announced by a court as opposed to a legislature, can be judged on the same standard that pure legislation would be. I think that if the West Virginia legislature had passed this law, it would be a pretty straightforward claim. It's obviously muddied by the fact that it was the Supreme Court that announced it rather than the legislature, but in Bowie v. City of Columbia, the Supreme Court held that the due process interest to notice that's protected by the 14th Amendment cannot be violated by any branch of government, including the judicial branch. And in that case, of course, the question was whether the modification of a very straightforward trespassing statute to encompass conduct that wasn't foreseeable essentially based upon the plain language of the statute could be retroactively applied to the first person who violated it, and the court held that it could not. But that notice interest does not just apply to the retroactive application of criminal laws. It applies also, it is the origin of the vagueness standard as well as the rule of lenity as discussed in linear. Well, these may have all be connected, but I thought in Beckles, the court said the void for vagueness inquiry is distinct from the ex post facto inquiry. They all may have notice principles at their heart, but they're slightly, at a minimum, slightly different inquiries. And the question for us on habeas is whether it was clearly established that this void for vagueness doctrine applies to judicial decisions. What's the opinion where any court has held that the void for vagueness doctrine applies to judicial decisions? Your Honor, as far as I know, there is not an opinion that specifically states that, but there are two opinions which read in conjunction. You've got the buoy opinion that talks about the retroactive application. If you look at United States v. Lanier, which discusses the different manifestations of that right to notice, then I think it's clear that the 14th Amendment right, which is not permitted to be violated by any branch of government, also applies in this circumstance. And not simply to a retroactive application. And it might apply. You might be right that there are reasons to think that this doctrine should apply or does apply to judicial opinions, but the question for us is whether it was already clearly established that it does when the West Virginia court acted. I think the standard also looks at whether or not the court unreasonably declined to extend a principle when it should have. And I believe that's another frame with which you can look at this. At what point in time do you say this failure to extend occurred? Was it at the habeas review by the West Virginia Supreme Court or in the U.S. District Court or both? No, it would be by the state court. It was the failure of the state court to extend the principle announced by the United States Supreme Court in this context. And that's when they were reviewing the denial of his habeas petition from the West Virginia Circuit Court. State habeas, yes, Your Honor. Mr. Cooper, how did they unreasonably apply it then? What did they fail to consider based on the Constitution? They failed to consider whether or not this, and in fact did not even discuss, if you look at the state Supreme Court opinion, whether or not this falls into the due process right to notice that's protected by the 14th Amendment, as discussed in the two Supreme Court opinions that I've talked about so far here, the buoy and lanyard. Well, I think our standard, though, as I understand it in that circumstance, perhaps I'm mistaken, is that even if the state's house court doesn't discuss the particular issue, it requires a showing for habeas relief that there could have been no rational basis upon which they base their decision. Is that accurate? Yes, I believe that's accurate. I'm not going to contest that the mere fact that they didn't directly address that issue that I'd raised in the state habeas appeal is this positive. I'm not suggesting that that in itself is this positive. So I think the court is permitted to consider that. But I think it's interesting, again, that subsequent to these proceedings happening, the West Virginia legislature went back and actually modified the recidivist statute. It did not explicitly state in the preamble of the legislation that it was for the purpose of making it comply with these principles. But certainly under the new version of the statute, every criminal violation that can be the basis for a recidivist enhancement is specifically described. Of course, that complies with the new law. And I think that that is a recognition that there are constitutional infirmities with the existing setup, which was a combination of the old recidivist statute interpreted through the proportionality standard. So going forward, I think the recidivist cases in West Virginia are unlikely to be affected very often, if at all, by this proportionality standard. But for the ones that took place prior to the amendment, I think there is this constitutional question that is a – I think it has not been stated explicitly, but the principle has been stated explicitly that you have a 14th Amendment right to notice that needs to be observed by not just the legislature, but the judicial branch. This court, in 1975, prior to a lot of the cases that arose in West Virginia, including the housing case, held in Griffin v. Warden that the recidivist statute should apply in situations that involve the potentiality of violence and danger to life. And that language was also adopted by the state Supreme Court, which again goes to show that it's not the actual conduct, it's not the specific elements of the offense, which have been held to be permissible bases to enhance a sentence. As in the ACCA, the elements test remains, and Justice Gorsuch discussed the potential availability of looking at the actual facts of the case. But you have – just the potentiality of violence requires the same sort of ordinary case hypothetical that was found to be impermissible. And of course, in the facts of this case as examined by the state Supreme Court, on direct appeal, it was noted that the petitioner who was only convicted of larceny, along with another person went to the house, the other co-defendant was convicted of burglarizing the house as well. There was no suggestion that there was any person present who suffered violence, that there was any actual threat of violence made to that person. It was only the application of this hypothetical. And that is clearly a – So is it your view that West Virginia uses a categorical approach here, or a fact-specific approach, or do they just kind of take what hits them at the time? Well, I think going back, again, starting with those cases in the early 80s that quoted from this court's Griffin v. Warden case, they were definitely using that modified categorical approach that was found to be impermissible in the Johnson line of cases. I think more recently, as I think the respondent cited in the response brief, there are cases that I think look more fact-specifically at the case, perhaps in light of that line of cases and trying to avoid any sort of constitutional issue with them. But in this case, certainly the court did not look directly at the facts of the case and determine that violence took place or that there was any threat of violence. They looked at an entirely different hypothetical situation that didn't take place and judged that under that other hypothetical scenario, somebody might have been threatened with violence. Which, again, is the exact type of hypotheticals that were found to constitute a vague conviction or a vague basis for enhancing criminal liability in Johnson in the succeeding cases. Mr. Cooper, let me make sure I understand your response to the question. Judge Agee asked, though, whether or not in this case the Supreme Court used a categorical approach or a case-specific approach. Your answer is what? Categorical. All right. But in your briefs, you do suggest, though, that they, in fact, did do a case-specific approach. And in essence, you just disagree with the conclusion they wrote, they reached. Your Honor, they examined the facts of the case. That is true. So if they're examining the facts of the case, is that not a case-specific approach? It would have been if they actually relied on the facts of the case. But isn't that the essence of my question? What you're saying is they did, but I don't like the result that they reached. If they had analyzed the facts of the case and found that, in fact, Mr. Wills had employed violence or threatened violence or there was somebody there who could have experienced violence, then I don't think that I would have any ability to take any qualms with that case-specific analysis. But here, that's not what happened. They looked at the case, and despite finding that there was nobody who could have been the recipient of violence, they determined that because it was a larceny that had a side crime by co-defendant of burglary, that there might have been a possibility of violence taking place, which, again, is the kind of hypothesizing that is frowned upon in the Johnson line of cases. You're not talking about what actually happened. You're talking about what could have happened based on the commission of this particular crime. That's what violates the vagueness standard. If there was a person there who had been victimized, who actually suffered violence, of course, or there was a potential for violence based on the actual events that transpired, then I don't think that I really have a lot to work with in that regard. But that's not what happened. There was no violence. There was no person present. And under that standard, you have to come to the conclusion that the court employed the categorical approach, the potentiality of violence and danger to life, as suggested by this court in the Griffin case in 1975, potentiality, not what actually happened. Because it isn't what actually happened. So for that reason, I don't think that you can draw the conclusion that it was fact-based. All right. Thank you very much. You've got some time left on rebuttal. Ms. C, we'll hear from you. Thank you, Your Honors, and may it please the court. Lindsay C. here today on behalf of Superintendent Zilkowski. On his 10th felony conviction, Mr. Wills was sentenced under a West Virginia statute that everyone here agrees is perfectly clear. But he claims he's entitled to habeas relief because the standard that the state Supreme Court uses to apply state court proportionality principles is unconstitutionally vague. Let's change the factual setting here a little bit and see if we can arrive at our distinguishing principles. So let's say Mr. Wills has just been convicted. Same charges in the circuit court. He appeals direct appeal to the West Virginia Supreme Court. They render an opinion substantially similar to what they did here on his habeas appeal. And then he appeals directly to the United States Supreme Court and raises a constitutional issue. Is there a different result there? There's not a different result, but the analysis is different because that would be different. We wouldn't be under the AEDPA standard where the question would be, is the rule in fact already clearly established? It would be a different sort of question there. Of course, we don't have that here. We do not have that Supreme Court decision. But the result wouldn't be different because showing the rule is clearly established is only the first hurdle that Mr. Wills has to clear. He has to show that he would win under that rule, even if these vagueness principles apply to a circumstance of a judicial limiting principle that limits potential criminal exposure. He still couldn't show he wins because he, in fact, had notice of the standards that would apply to him. And those standards are not vague under the principles that the Supreme Court has set forth. But I think it is important to make sure that we are looking at the right legal framework here. He's not in that direct appeal posture. He is in AEDPA. You're correct about that we're under AEDPA here. I just wonder if in the hypothetical where we weren't, so follow me there, that what we were just talking about with your friend on the other side about whether West Virginia applies a categorical approach or not. And they seem to have acknowledged that the categorical approach and the fact specific approach are different, that both exist, and that they have refused to pick a side. They have an opinion where they say, whether we choose one or the other, it doesn't matter in this case, so we're not going to choose. Doesn't that make it more vague? I mean, for the defendant who falls under the statute and who's left wondering, which approach is the West Virginia Supreme Court going to pick this time? How will it apply to my case? Kind of impossible to know. If we weren't under an AEDPA standard, would that indeterminacy make it more vague, or is that not a problem? I do think that it would make it a slightly stronger case for Mr. Wills. I'm not going to contest that. I would contest the premise there. It is true the West Virginia Supreme Court of Appeals has not clearly said we never apply a categorical approach. But in that case, it's the Mueller decision, or if not, a similar one that said something like that. The court did, in fact, look at the particular facts of that case. The domestic battery, and the court was recognizing, we know there is this debate, and the defendant had argued that we should not apply a categorical approach. And the court said, we don't have to give an answer here because domestic battery, by its nature, involves violence. But more specifically, this crime here, under the facts, involved violence to a victim. And that principle of looking to the facts in each case is what the West Virginia Supreme Court of Appeals has done consistently. We can even see that from the cases that Mr. Wills cites in his brief. The Houston case, for instance, that talks about grand larceny and burglary, looks at the particular facts of that case and the potential for harm to a victim. But they also, in the language I read to your counsel on the other side, used phrases that seemed very similar to the Damiah Johnson type phrases. Because they talk about the nature of the crime involves the potential for threatened harm or violence. And some of those terms appear in the statutes in the Johnson line of cases. So, it sort of seems like the crucial defining factor here is the AEDPA standard. I do agree, and let me be very clear. I think the AEDPA standard resolves this case. At best, there is an unresolved and interesting question how far these vagueness doctrines should go to limiting construction. It is not resolved. Therefore, Mr. Wills' petition should be denied. But if we are operating in this framework where we would look at, is this in fact a valid vagueness claim, I think it would still fail. Even under that language, Judge Agee, that you're looking at, the court did then go on to look at the particular facts of the burglary and larceny in that case. And that's very consistent with what the state Supreme Court does. But even if the court doesn't want to take a side on that, assuming, again, we get to the merits of the vagueness claim, there are other reasons that the Johnson and DiMaio line of cases would not apply here. Actually, Johnson went out of its way to say that any of those factors, and categorical versus case-specific is one of them, any of them in isolation would not necessarily be a problem. It was a constellation of really four things that the Supreme Court relied on to conclude that that statute was unconstitutionally vague. It was that categorical approach. It was also a standard that had an indefinite risk assessment. What does a serious risk or substantial risk look like? In Johnson in particular, the statute also tied that to other crimes. And so it was really difficult to assess an ordinary case of arson or a crime involving explosive against an ordinary case of felon in possession. And then the last factor was that the Supreme Court had tried and failed many times to bring order and some kind of consistency to this area of the doctrine. We just don't have that here. Again, the West Virginia Supreme Court is looking at case-specific factors. That's true in this particular case here. We can look at that both at the direct review of the sentencing and again at the state habeas proceeding. There the court looked at the grand larceny, which was the final conviction in this case, and said under the facts of this case, the victim in fact could have come home. This is what both the trial court and the state Supreme Court said. And there would have been that risk of threat of violence. In that case, there had been 45 minutes since the security cameras were cut and when the victim returned. So it's different from saying that in a hypothetical grand larceny case, somebody might return and there might be violence. That's different from saying in this grand larceny case, there was a very real potential for harm. So the state Supreme Court did do that case-specific analysis. It also did that on the other underlying third offense DUI charges. There the court did rely on its previous Appleby decision, which is fairly close to in all cases DUI has the potential for violence, which makes sense because that's the reason we criminalize that. It's a reckless disregard for human life when you operate a motor vehicle while you're impaired. But even in this case, the court didn't stop with Appleby. It said this isn't a case of one DUI, therefore it's automatically categorically violent. So this is a case of three third offense DUIs, so at least six separate DUI convictions. So that showed that this particular defendant had a repeated disregard. So we see that fact-specific analysis here. The other thing I would say that distinguishes this from the Johnson and DiMaio line of cases, this isn't an area where courts have really been struggling with how to apply this area of the law. For 40 years since the Wand Street decision, the state Supreme Court has been able to fairly apply a violence or threat of violence standard. This isn't the sort of thing we saw in the Johnson and DiMaio cases where courts were reaching contradictory resolve. In fact, the Hoyle decision, which Mr. Wills argues changed the law in some ways in 2019, is actually an example of a very quick course correction in the state law. There had been two prior decisions that year that had reached what looked like opposite results when it came to drug charges. The state Supreme Court was very responsive to that and said when the Hoyle decision came up, it's important for us to clarify what the rules are so everyone has notice going forward. So even the one instance where you could argue that there was some confusion in the law, the state Supreme Court corrected that quickly and there hasn't been these issues lately that we had in the Johnson and DiMaio cases. So if we were to determine that there had been no clearly established law that judicial interpretations in the void for vagueness area are a reasonable extension of established Supreme Court law, can we simply stop there? We would not disagree, yes, because the task for Mr. Wills is to show that it was unreasonable to apply existing Supreme Court precedent to this context. That's all the court needs to do. The court does not need to go further on what the law should be or might become in future cases. What matters here is that the law is not clearly established to say that a judicial interpretation at all triggers this sort of void for vagueness analysis and certainly not a judicial interpretation in this context where it serves to lessen potential criminal exposure, not expand it. I think we can briefly look at the Bowie decision that Mr. Wills relies on to show why in fact that's the case. There it is true the Supreme Court was dealing with judicial construction, but it really focused on three factors that show just how different it is from this context. The first factor was this idea of the judicial construction was enlarging criminal liability. That's all over the Bowie decision. The Supreme Court was really concerned with the idea that conduct that was perfectly innocent in 1960 somehow became illegal in a 1961 state interpretation of the statute. So the idea of transforming conduct into criminal conduct is something the court was very concerned about and isn't present here. The second distinction the court was really concerned about unforeseeable development. In that case, the state Supreme Court had been applying the criminal trespass law consistently for 95 years in one direction. So it was a complete surprise that they were going to change course in 1961. Here, as we've already said, that's the opposite. We have a situation of four decades of very stable application and nothing that we've seen in this case or in the Hoyle decision before changed that. And the last distinction is one that Judge Rushing, you seized on, this idea the court was really concerned with the idea of the ex post facto concerns. The idea was that the conduct had occurred one year and the state Supreme Court decision didn't come down until a year later. And so the court said, of course, if the legislature passed a statute a year later, we couldn't apply that retroactively to someone. You can't do the same thing with a state judicial opinion. So it was really bound up with this retroactivity concern. There just aren't any cases from the Supreme Court that say when you don't have that retroactivity concern that judicial constructions of any stripe are enough to implicate void for vagueness concerns. And certainly not enough to say judicial constructions that limit exposure are enough. I think the last thing I know on that retroactivity point is there's really no argument that that exists here. Mr. Wills, in fact, was on notice of the standards that would apply to his criminal conviction. Of course, everyone agrees the statute itself is clear. Nobody is challenging that. But this also isn't a case of edge felonies. This isn't a fraudulent check, which was in the Wall Street decision. This is grand larceny and DUI, which may not always involve violence, but it doesn't surprise everyone that those are the sort of things that may, in fact, commonly involve violence. And, in fact, he also admitted at his sentencing hearing that he knew that the West Virginia Supreme Court treated third offense DUIs as violent crimes. That's something that the sentencing judge specifically asked him. And that exchange is on page 89 of the joint appendix. Are you aware that these prior offenses are something our court considers violent and that the result is you will very likely be sentenced under the recidivist statute? And he admitted that, yes, he had that knowledge. So this isn't a case where he was trapped, even if a potential objective other defendant wouldn't have been. He, in fact, had notice of the standards that would apply to him. So this isn't a case where we've got any retroactive concerns there. The only other potential retroactive argument would be that the Hoyle decision in 2019 somehow changed things by adding a substantial effect on the victim prong. But that standard was never applied to Mr. Wells. That decision came down two years after his original sentence was imposed and was reviewed on direct review. The trial court and the state Supreme Court looked at the well-established violence or threat of violence standard. The only decision from the state court that came down after the Hoyle decision was the state habeas decision. And there the court just cites the new standard, which has the three prongs instead of two prongs. But it refers back to the analysis from direct review. So he doesn't even have an argument if there was a change in the law that it was applied against him. So ADPA does begin and end this. There is no clearly established rule that shows he's entitled to relief. And even if the court were to disagree on that, he would still have to show that he wins under that rule. And he can't do that when he, in fact, had notice and the standards, in fact, are not vague. There's nothing impermissible or unconstitutional about risk assessments. Johnson went out of its way to say that substantial risk, threat of harm, those sort of things are fine as long as they're not paired with the categorical approach and the tricky history and the tricky examples. If you don't have all of those, we don't have to throw out something just because it is not the most precise standard. And the last thing I'd emphasize is that's particularly important in a context like proportionality review that is not going to have clear, bright-line rules all the time. The federal Supreme Court proportionality review looks at a lot of factors that could be argued to be subjective. It's a different sort of analysis than when it comes to looking at a particular statutory triggering offense. And what we have here is actually a very clear standard, unusual there. Two out of three offenses have to meet one of three prongs. So we have a lot of clarity in an area where clarity is particularly difficult. It's certainly not enough to reach the very high approach for void for vagueness claims to say that it's utterly standardless in West Virginia. We have a standard. It's been working well. Mr. Wills was fully aware of it. There's no reason to grant his habeas relief. Thank you, Your Honors. Thank you very much. Mr. Cooper, you've got some rebuttal time left. I would go back to the State v. Houston. It was talked about, looked at the specific facts of the case. That is, in fact, if you examine that case, very similar to Mr. Wills' situation, where, again, the court looked at the situation. There wasn't any actual violence that took place. There wasn't an actual threat of violence that happened to any individual person. But instead, the court determined that somebody could have, and I guess in an alternate universe, come home and been threatened with violence. Of course, that did not happen. Under the actual facts of Houston, as in under the actual facts of Mr. Wills' case, there was nobody that came back and was threatened with or experienced violence as a result of the, in that case, breaking and entering. So I think that, again, it's indicative of substituting the theoretical harm that could arise under this crime for the actual facts that took place in the case and can't escape scrutiny based upon that. I'd also like to discuss the issue concerning the two inconsistent cases that preceded the Hoyle decision. In one of those cases, the State Supreme Court held that it did involve a threat of violence to the person to deal heroin. It did not involve a threat of violence to the person to deal pill-formed opiate drugs, despite the chemical similarity of the two substances. And, of course, that preceded both the Hoyle case subsequently and preceded the change by the legislature going to specific enumerated crimes that can lead to recidivist treatment. That inconsistency has not been fixed exactly. I would note that the person who was convicted of selling heroin is, in fact, still serving a life recidivist sentence. So it's not that the court has gone back and fixed the inconsistency there and applied it in some sort of fair way. I think those two cases are very indicative of the ad hoc method that is completely unpredictable for criminal defendants. And it's not something that I think comports with the protections of due process, which exist and have existed for a very long time and are certainly clearly established. The right to notice is not some recent invention that postdates Mr. Well's conviction. This is something that has existed in our law, has existed in the law which we inherited long before even the Constitution of the 14th Amendment were ratified. So that right to notice exists. It was violated by the manner in which the court sentenced Mr. Well's to life, even in the absence of a specific case that dealt with the exact same set of circumstances on which this court could rely. I do not have a case where this exact same thing has happened that I can point to the court, but I can certainly point that this right exists and the recognition that the right to notice cannot be violated by any of the branches of government. So on that basis, I would ask the court to find that it was unreasonable for the state Supreme Court to decline to establish the principle from Johnson and DiMaia to a factual circumstance that almost certainly wouldn't pass muster if it had been pure legislation, and that the court determined that Mr. Well's confinement on a life sentence violates his rights under the U.S. Constitution and grant him relief. Thank you. All right. Thank you very much. We appreciate the argument from both counsel, and now we'll come down in person to greet you, and we'll go on to our second case.
judges: G. Steven Agee, Allison J. Rushing, Joseph Dawson III